UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Michigan Spine and Brain Surgeons, PLLC,

    Plaintiff,                                                                            Case No. 12-cv-11329

v.

                                                                            Sean F. Cox
                                                                            United States District Court Judge

State Farm Mutual Automobile Insurance Company,

    Defendant.
_____/

**OPINION AND ORDER
DENYING PLAINTIFF STATE FARM'S MOTION TO DISMISS AND/OR MOTION
FOR PARTIAL SUMMARY JUDGMENT**

       This civil action was removed from the Oakland County Circuit Court on March 23, 2012. It involves a dispute over whether an automobile insurance policy ("the Policy") issued by State Farm Mutual Automobile Insurance Company ("State Farm"), which provides for basic personal insurance protection benefits ("PIP benefits") under the Michigan No-Fault Act, insures medical expenses incurred as a result of extensive neurological surgery and other neurological services performed on Jean Ellen Warner ("Warner"), the individual insured under the Policy, by Plaintiff Michigan Spine and Brain Surgeons, PLLC ("Michigan Spine").

       State Farm denied coverage of the medical expenses associated with the surgery and the other neurological services performed on Warner, contending that the Warner's medical conditions were preexisting, and were not caused by an automobile accident, involving the Warner, that occurred on October 26, 2010. As a result of State Farm's denial of her claim, Medicare paid for the Warner's surgery and other medical expenses under the Medicare Secondary Payor Act.

The Medicare Secondary Payor Act pays for medical services when an insured, who is also covered by Medicare, is denied coverage by the primary payor. Medicare is referred to as the secondary payor. Medicare can seek reimbursement, pursuant to the statute, by filing suit against the primary payor or by enforcing a judgment that was rendered against the secondary payor addressing the secondary payor's liability. The Medicare Secondary Payor Act has a private enforcement provision, which is the subject of this action.

In Count I of the Complaint, which was filed on February 15, 2012, Michigan Spine contends that it is entitled to payment of reasonably necessary medical services under M.C.L. §§ 500.3107(a) and 500.3142(f) for the insured's care, recovery and rehabilitation, including interest under M.C.L. § 500.3143(3) and attorney's fees under M.C.L. § 500.3148(f).

In Count II, Michigan Spine contends that it has a direct right to payment by State Farm under the Medicare Secondary Payor Act, 42 U.S.C. § 1395y(b)(2)(B), 3(A). Michigan Spine requests double damages pursuant to 42 U.S.C. § 1395y(B)(3)(A).

On September 28, 2012, State Farm filed its Motion to Dismiss and/or Motion for Partial Summary Judgment. State Farm makes two challenges to Count II in its motion: (1) Michigan Spine has no standing to bring its claim under the Medicare Secondary Payor Act because the Michigan Spine's right to sue has not yet "materialized" because State Farm's liability for the medical services has not been determined by a court and (2) no justiciable controversy exists because State Farm's liability under the Medicare Secondary Payor Act has not been determined by a court. (*Id.*)

The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid the decision making process. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motion will

be decided on the briefs.

For the reasons that follow, this Court **DENIES** State Farm's Motion to Dismiss and /or Motion for Partial Summary Judgment [Docket No. 8].

## BACKGROUND

Michigan Spine is a licensed medical practice that provides neurosurgical care and services in Oakland County, Michigan. (Docket No. 1-2, at 2, ¶ 1.) Warner was insured by State Farm under the Policy, which was issued pursuant to the Michigan No-Fault Automobile Insurance Act. (*Id.* at 3, ¶ 6.)

The Policy provides for PIP coverage. The relevant PIP coverage provision in the Policy states as follows:

> 1. Personal Injury Protection Coverage
>
> We will pay, subject to the provisions of the No-Fault Act, for accidental bodily injury to an insured arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle:
>
> a. Allowable Expense Benefits
>
> Allowable expenses are all reasonable charges incurred for reasonably necessary products, services and accommodations for an insured's care, recovery or rehabilitation . . . .

(Docket No. 2-2, at 11.) (highlighting and italics omitted).

Warner became Medicare eligible in 2000. (Docket No. 10, at 10.) On or around that time, Warner was injured in another automobile accident. (*Id.*) However, Warner did not undergo surgery for those injuries. (*Id.*)

On or around October 26, 2010, Warner was injured in a rear-end collision. (Docket No. 1-2, at 3, ¶ 5.) Following that accident, Michigan Spine provided extensive spine surgical services,

3

including neurosurgery, to Warner. (*Id.* at 4, ¶ 10; Docket No. 10, at 10.) Dr. Teck Soo, Chief of Neurosurgery at the Providence St. Johns Hospitals, was the surgeon who provided those services. (Docket No. 10, at 10.) He alleges that the insured suffered a severe cervical disc injury, including lumbar spondylosis at L4-L5 and posterolateral disc herniation at L4-L5. (*Id.*) Dr. Soo performed a posterolateral interbody discectomy and fusion, at L4-L5 with placement of anterior biomechanical device at L4-L5 with a K2M PEEK cage and a minimally invasive pedicle screw system. (*Id.*) The charges for this surgery were $24,645.001. (*Id.*) Michigan Spine alleges that there are additional charges due for office visits and films and other services. (*Id.* at 10, n. 1.) In addition, Michigan Spine contends that it appears that there will be a second surgery. (*Id.*)

Michigan Spine contends that "[u]nder the terms and conditions of the automobile insurance policy, [State Farm] became obligated to pay benefits due to, or on behalf of the insured, upon sustaining accidental bodily injury arising out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle." (Docket No. 1-2, at 3–4, ¶ 9.)

State Farm counters that it has "not extended no-fault benefits for the claimed services since they did not qualify as compensable medical services as contemplated under MCL 500.3107(1)(a) of Michigan's No-Fault Act or even Ms. Warner' insurance policy with State Farm. Specifically, [State Farm] disputes its liability for such expenses because, among other issues, Ms. Warner's symptoms and injuries predated the October 26, 2010 accident, resulting in her being disabled from employment before this accident even occurred." (Docket No. 8, at 9.)

Because State Farm refused to pay for the surgery and other services performed by Michigan Spine, Warner submitted her claim to "CMS/Medicare." (*Id.* at 10.) She was approved for conditional payment under the Medicare Secondary Payor Act ("MSPA") by her secondary health

insurer, Blue Care Network, Advantage Plan, a Medicare "Advantage HMO." (*Id*. at 10–11.)

Michigan Spine commenced this action on February 15, 2012, asserting claims for direct payment of benefits under the Michigan No-Fault Act (Count I – Direct Right of Payment and Subrogation Claim Pursuant to Law) and damages under the Medicare Secondary Payor Statute (Count II - Recovery Under the Medicare Secondary Payor Act).

### STANDARD OF REVIEW

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg–Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (internal quotation marks omitted). "A motion brought pursuant to Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Id.* (quoting *JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir.2007)).

Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S. Ct. 2505 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587,

106 S. Ct. 1348 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598 (1970).

The non-moving party may not rest upon its mere allegations, instead, he or she must set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(c). The mere existence of a scintilla of evidence in support of the nonmoving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. Daimler-Chrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## ANALYSIS

State Farm's Motion to Dismiss and/or Motion for Summary Judgment (hereinafter referred to as "the motion") only addresses Count II in the Complaint. (Docket No. 8.) Count II states as follows:

> 17. All paragraphs are incorporated by reference.
>
> 18. Plaintiff extended medical services to Plaintiff including intensive neurosurgical services, and has a direct right to payment by Defendant Insurer, which is liable for the payment under the Medicare Secondary Payor Act ("MSPA"), 42 USC 1395y(b)(2)(B)(ii).
>
> 19. Defendant was the primary plan for payment of the no-fault costs asserted as due and owing herein, and had a responsibility under the Michigan No-Fault act and under federal law to make payment with respect to such services arising out of the coverage provided in Defendant's no-fault policy.
>
> 20. Defendants, and each of them, have refused to pay a significant claim for neurosurgery arising out of the accident to Michigan Spine and Brain Surgeons, PLC, in 2010 an 2011, leaving the claim to be paid by Medicare.
>
> 21. As a result of Defendants' denial of benefit, a conditional payment by Medicare is allowed to MSBS pursuant to the Medicare Secondary Payor act, for which reimbursement Defendant, must make, as primarily liable under the Act.

> 22. Pursuant to the Medicare Secondary Payor Act, Defendant Insurer remains liable for double damages, inasmuch as it has refused to make reimbursement to the medical provider of its charges arising out of its liability, pursuant to 42 USC 1395y(2)(B)(iii), 42 USC 1395y(b)(3)(A).

(Docket 1-2, at 5–6.)

State Farm makes two challenges to Count II in the motion. (Docket No. 8.) First, the State Farm contends that Michigan Spine has no standing to bring its claim under the Medicare Secondary Payor Act because the Plaintiff's right to sue has not yet "materialized" under the act because no court has determined that State Farm is liable for the medical services and there is a 60 day waiting period for reimbursement to Medicare once liability has been established. (Docket No. 8, at 13.) Next, the State Farm asserts that no justiciable controversy exists because "the primary plan's 'responsibility for such payment' has not been determined . . . ." (*Id.*)

Michigan Spine counters that these issues have already been resolved in *Bio-Medical Applications of Tenn., Inc. v. Central States Health and Welfare Fund*, 656 F.3d 277 (6th Cir. 2011). (Docket No. 10, at 11.) Furthermore, Michigan Spine argues that State Farm misunderstands and improperly applies the concepts of standing and justiciability in its motion. (*Id.*)

Regardless of whether State Farm misunderstands or misapplied "standing" and "justiciability," the Sixth Circuit has already addressed the underlying issue in this case, i.e., whether Michigan Spine, a health care service provider, may bring a private action to enforce the Medicare Secondary Payor Act before a court or other adjudicative body has determined whether or not the insurer/primary payor is liable for the medical charges incurred.

In *Bio-Medical Applications of Tenn., Inc.*, the Sixth Circuit answered the aforementioned question in the affirmative. 656 F.3d at 280. Bio-Medical Applications of Tennessee, Inc. ("Bio-Medical") provided kidney dialysis services to a patient who was insured by Central States

Southeast and Southwest Areas Health and Welfare Fund ("Central States"), starting in August 2005. *Id.* Central States made timely payments under the policy, but later contested its liability, citing to language in the policy that stated that "[c]overage under this Plan shall terminate on the earliest of the following dates: . . . (b) the date [the insured] first becomes entitled to Medicare benefits . . . ." *Id.*

On November 1, 2005, the patient became eligible for Medicare benefits, three months after her dialysis treatment began. *Id.* Central States did not realize that the patient was entitled to Medicare benefits until January 2006. *Id.* Thereafter, it refused to make further payments, and later partially reimbursed itself by withholding payments from other accounts with Bio-Medical. *Id.* Bio-Medical continued to bill Central States during this time, contending that it was prohibited from terminating its policy on account of the insured's eligibility for Medicare coverage. *Id.* Sometime before the patient's death, the patient assigned her rights under the insurance plan to Bio-medical. *Id.*

Bio-Medical filed suit in the United States District Court for Middle District of Tennessee, contending that it had a private cause of action for double damages under the Medicare Secondary Payor Act, 42 U.S.C. § 1395y(b)(3)(A) for Central State's violation of that statute. *Id.* at 281. Relying on a string of federal cases, some of which State Farm cites to in its response, the Middle District of Tennessee dismissed the Plaintiff's claim, holding that "a necessary precondition to a lawsuit under the private cause of action for double damages was that the defendant's responsibility to pay must have been previously 'demonstrated' before the filing of the claim, and that Central States' responsibility to pay had not yet been so 'demonstrated' or established in this case." *Id.*

In its opinion, the Middle District of Tennessee relied on the "demonstrated responsibility"

8

provision in the Medicare Secondary Payor Act, which reads as follows:

> A primary plan, and an entity that receives payment from a primary plan, shall reimburse [Medicare] . . . for any payment made by [Medicare] . . . under this subchapter with respect to an item or service if it is demonstrated that such primary plan has or had a responsibility to make payment with respect to such item or service. A primary plan's responsibility for such payment may be demonstrated by a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means . . . .

42 U.S.C. § 1395y(b)(2)(B)(ii).

Bio-medical appealed the district court's dismissal of its claim, contending, among other things, that the Middle District of Tennessee misapplied the "demonstrated responsibility" provision. *Bio-Medical Applications of Tenn., Inc.*, 656 F.3d at 281.

The Sixth Circuit, in a very detailed opinion, addressed the issue as follows:

> [W]hen a group health plan violates the Act, what is the remedy for injured healthcare providers like plaintiff? If the 'group health plan' fails to pay a provider 'promptly,' then Medicare can step in and make a temporary payment on behalf of the delinquent private insurer. For this situation, the Act also contains a private cause of action that permits a private party, such as a healthcare provider, to sue the private insurer. Pointing to a different provision in this convoluted statute, several federal courts (including the district court below in this case) have held that in order for a private insurer to be liable under the private cause of action, the private insurer's responsibility to pay must also be 'demonstrated' (e.g., via a prior judgment or settlement) prior to the litigation. Some of those courts found that an existing contract for the insurer to pay the provider is insufficient. We reject that interpretation. After engaging in a close reading of the Act's tortuous text and studying its amendment history, we believe that the Act's 'demonstrated responsibility' provision serves as a limitation only in a very specific situation: when Medicare seeks reimbursement for medical expenses caused by tortfeasors. Thus, we hold that a healthcare provider need not previously 'demonstrate' a private insurer's responsibility to pay before bringing a lawsuit under the Act's private cause of action.

*Id.* at 278–79.

In sum, the Sixth Circuit held that the "demonstrated responsibility" provision only applies

9

to a lawsuit brought by Medicare for reimbursement and only limits the class of alleged tortfeasors whom Medicare can sue for reimbursement to those insurers who have been liable or have entered into a settlement for causing the harm that led to Medicare expenses. *Id.* at 294.

In its motion and its reply brief, State Farm attempts to distinguish *Bio-Medical Application of Tenn., Inc.*, by citing to several district court cases that predate Bio-medical and cases from other circuits. Those cases are not controlling.

State Farm also contends that *Bio-Medical Application of Tenn., Inc.* is distinguishable because the patient/insured in that action assigned her rights under the insurance plan to Bio-Medical, the medical care provider. The Sixth Circuit engaged in an in-depth analysis of the history and legislative intent of the Secondary Payor Act as it relates to third party medical service providers, in general, who are enforcing the Medicare Secondary Payor Act under the private enforcement provision. Nowhere in that case does it suggest that it was intended only to apply to medical service providers who are assigned rights under an insurance contract. State Farm has provided no convincing argument or authority suggesting otherwise.

## CONCLUSION AND ORDER

**IT IS ORDERED** that Plaintiff State Farm's Motion to Dismiss and/or Motion for Partial Summary Judgment [Docket No. 8] is **DENIED**.

**IT IS SO ORDERED**.

                                              S/Sean F. Cox
                                              Sean F. Cox
Dated: February 11, 2013            United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Michigan Spine and Brain Surgeons, PLLC,

    Plaintiff,

Case No. 12-cv-11329

v.

Sean F. Cox
United States District Court Judge

State Farm Mutual Automobile Insurance Company,

    Defendant.
_____/

**PROOF OF SERVICE**

    I hereby certify that a copy of the foregoing document was served upon counsel of record on February 11, 2013, by electronic and/or ordinary mail.

                              S/Jennifer McCoy
                              Case Manager